783 So.2d 590 (2001)
Johnny PICARD, et al.
v.
VERMILION PARISH SCHOOL BOARD.
No. 00-1222.
Court of Appeal of Louisiana, Third Circuit.
April 4, 2001.
*592 J. Isaac Funderburk, Funderburk & Herpin, Abbeville, LA, Counsel for Plaintiffs/Appellees: Johnny Picard, et al.
Calvin E. Woodruff, Cooper, Woodruff & Robicheaux, Abbeville, LA, Counsel for Defendant/Appellant: Vermilion Parish School Board.
Court composed of DOUCET, C.J., and THIBODEAUX and WOODARD, Judges.
THIBODEAUX, Judge.
In this case, nine former employees sued the Vermilion Parish School Board for monetary compensation for unused, accrued annual leave. The trial court found for all of the employees except Johnny Picard. The School Board and Mr. Picard appeal the judgment of the trial court.
We affirm.

I.

ISSUES
The Vermillion Parish School Board, as Defendant Appellant, asks that we consider the following issues:

*593 (1) whether the trial court erred in awarding additional attorney fees in the amount of $12,000 on remand when the award exceeded the scope of the appellate court's remand order; and
(2) whether the trial court erred in denying the school board's exceptions of prescription by improperly applying the doctrine of contra non valentum.

Johnny Picard, as Plaintiff Appellant, entreats us to determine whether the trial court was manifestly erroneous in determining that the Vermilion Parish School Board did not owe him for any unused days of annual leave.
Thomas Harris and Carlene O. LeMaire, as Plaintiffs Appellees in answer to the School Board's appeal, contend:
(1) that the trial court was manifestly erroneous in reducing the claim of Carlene O. LeMaire from 43 days unused leave to 1; and,
(2) that the trial court was manifestly erroneous in reducing the claim of Thomas Harris from 48 days of unused annual leave to 38.

II.

FACTS AND PROCEDURAL HISTORY
Twelve former employees brought suit against the Vermilion Parish School Board (hereinafter the "School Board") for compensation for unused annual leave. The trial court distinguished between those employees who were involuntarily and voluntarily terminated, dismissing the claims of nine employees who had left the school system voluntarily. Those nine employees, Irma Ball, Louis Boudreaux, Thomas Harris, Mildred Haynes, Stanislaus Kasperski, Michelle Labit, Carlene O. Le-Maire, Johnny Picard, and Velton Vincent (hereinafter the "Plaintiffs"), appealed the judgment to a panel of this Court. On June 23, 1999, this Court reversed the judgment of the trial court and remanded for further proceedings, holding:
[I]n the absence of a clear, written policy establishing that vacation time granted by an employer to an employee is nothing more than a mere gratuity and not to be considered an amount due or a wage, accrued but unused vacation time is a vested right for which an employee must be compensated upon discharge or resignation.
Picard v. Vermilion Parish School Board, 98-1933 (La.App. 3 Cir. 6/23/99); 742 So.2d 589, writ denied, 99-2197 (La.11/19/99); 749 So.2d 675.
The School Board applied for writs of certiorari to the Louisiana Supreme Court seeking a review of the decision of this Court. The writ was denied. Picard, 749 So.2d 675. On February 29, 2000, the trial court denied the School Board's exceptions of prescription and rendered judgment in favor of Ball, Boudreaux, Kasperski, Labit and Vincent, awarding compensation for unused annual leave plus penalty wages. The court also rendered judgment in favor of Harris and LeMaire, but with a reduced number of annual leave days in addition to penalty wages. The court then dismissed the claims of Haynes and Picard. The prevailing Plaintiffs were also awarded attorney fees of an additional $12,000.00. The School Board, Picard, Harris and Le-Maire have appealed the judgment of the trial court.

III.

LAW AND ARGUMENT

Whether the Principle of Contra Non Valentum Applied to the Prescription of the Plaintiffs' Case
The School Board argues that two of the Plaintiffs, Stanislaus Kasperski and Velton *594 Vincent, filed their lawsuits after the three-year liberative prescriptive period for wages and that they are, therefore, barred from bringing their claim. Their claim was based on a vested right to accrued, unused vacation time. According to Louisiana law, vacation time is wages and, therefore, the liberative prescriptive period of three years applies. The prescriptive period begins running from the date of the employee's separation from the system. Mr. Kasperski's separation date was March 25, 1994, and his claim was brought on April 2, 1997, or three years and eight days later. Mr. Vincent's separation date was July 1, 1993, and his claim was brought on August 22, 1997, or more than four years later.
Mr. Kasperski and Mr. Vincent admit that they filed their action after the prescriptive period but argue that the general rules of prescription do not apply to their claims because they were effectively barred from enforcing their rights for reasons beyond their own will. This is known as the suspensive theory of contra non valentem agere nulla currit praescripto, or "`prescription does not run against a party unable to act.'" Wimberly v. Gatch, 93-2361, p. 4 (La.4/11/94); 635 So.2d 206, 211. According to this theory, prescription does not begin to run until "a plaintiff either knew or should have known of a cause of action, even if that knowledge does not occur until long after the wrongful conduct at issue has occurred." Simmons v. Templeton, 97-2349, 98-43, p. 4 (La.App. 4 Cir. 11/10/98), 723 So.2d 1009, 1012, writs denied, 98-3050, 98-3060 (La.2/5/99); 738 So.2d 4, 738 So.2d 5. Louisiana jurisprudence considers contra non valentum to be "an exceptional remedy... in direct contradiction to the articles in the Civil Code" which must be "strictly construed." Harsh v. Calogero, 615 So.2d 420, 422 (La.App. 4 Cir.1993).
Under Louisiana law, the doctrine of contra non valentum halts the running of prescription when the circumstances of the case fall into one of the following four categories:
(1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action.
In re Med. Review Panel Proceeding Vaidyanathan, 98-0289 (La.App. 4 Cir. 9/23/98); 719 So.2d 604, 607, writ denied, 98-2674 (La.12/18/98); 732 So.2d 1238; Chaney v. State Through the Department of Health and Human Resources, 432 So.2d 256, 258-59 (La.1983). Although contra non valentum is a legal principle, its application to the facts of the case and a determination of whether or not the Plaintiffs were indeed prevented from filing their claim under one of the four circumstances is an issue of fact. Therefore the trial court's finding of fact on this issue is subject to the manifest error, clearly wrong standard of review. See Rosell v. ESCO, 549 So.2d 840 (La.1989).
Mr. Kasperski and Mr. Vincent argue that the principle of contra non valentum tolled prescription because they could not have reasonably known of the existence of their claim prior to this court's decision in Baudoin v. Vermilion Parish Sch. Bd., 96-1604 (La.App. 3rd Cir.4/2/97); 692 So.2d 1316, writ denied, 97-1169 (La.6/20/97); 695 So.2d 1358. The School Board contends that there already existed a long history of jurisprudence which considered accrued vacation time to be the equivalent of wages prior to the Baudoin ruling. According to this argument, the Plaintiffs would have had sufficient notice prior to the end of the prescriptive period to file *595 their claim and therefore contra non valentum would not apply.
The principles of contra non valentum do not halt the running of prescription "if the plaintiff's ignorance is the result of his own willfulness or neglect." Matthews v. Sun Exploration & Prod. Co., 521 So.2d 1192, 1197 (La.App. 2 Cir.1988). That is, the plaintiff will be deemed to know what he could by "reasonable diligence" have learned. Id. Prescription runs from the time that the plaintiff has actual or constructive knowledge of the act, which has been defined as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." National Council on Compensation Ins. v. Quixx Temporary Serv., Inc., 95-725, p. 7 (La.App. 4 Cir. 11/16/95), 665 So.2d 120, 124. Prescription does not begin to run at the first indication that the plaintiff may have suffered harm, but rather it begins to run "when plaintiff has reasonable basis to pursue claim against specific defendant." Jordan v. Employee Transfer Corp., 509 So.2d 420, 424 (La. 1987). The heart of the inquiry into constructive knowledge is the reasonableness of plaintiffs inaction. Id.
In Baudoin, a case that concerned other former employees of the Vermilion Parish School Board, this Court found that a retired employee was entitled to compensation for accrued but unused annual leave even though the employer may have had unwritten policies not to compensate employees for unused leave. See Baudoin, 692 So.2d 1316. The Louisiana Supreme Court did not rule on this issue until after the Baudoin decision, and in fact used Baudoin as support for its holding. See Beard v. Summit Inst. for Pulmonary Med. & Rehab., Inc., 97-1784 (La.3/4/98), 707 So.2d 1233.[1]
There were indications, however, that the law was developing in this direction. For example, this court found in an earlier case that,
Although the right to enjoy the annual leave was prospective, it became the property of the employee as it was earned during the first year of employment. Thus, the earned annual leave was an "amount then due" under La. R.S. 23:631(A).
Macrellis v. Southwest La. Indep. Ctr., 94-1155, 94-1156, 94-1157, p. 4 (La.App. 3 Cir. 5/3/95); 657 So.2d 135, 137. Other circuits have held similarly.[2] However, prior to Baudoin, there had been no case in our circuit or in the Louisiana Supreme Court directly addressing the issue of whether an employer may refuse to give compensation for accrued but unused vacation time. Whether or not the developing case law prior to our decision in Baudoin was sufficient to put the employees in this case on notice that they may have a claim was a question of fact for the trial judge. *596 We do not find that the trial judge committed manifest error in determining that the Plaintiffs were prevented from seeking redress because they were unaware that they had a reasonable basis to pursue a claim for their wages prior to the Baudoin decision.
Therefore, we find that the doctrine of contra non valentum does apply and that prescription had not begin to run against the employees' cause of action until after this court's decision in Baudoin. Because the claims of both Mr. Kasperski and Mr. Vincent were filed within three years of the date of our decision in Baudoin, they were timely filed and prescription had not yet run.

The Additional Award of Attorney Fees on Remand
The School Board argues that the trial judge's award of an additional $12,000.00 in attorney fees was improper. A trial judge has "much discretion" in determining attorney fees, and the award will not be modified on appeal absent a showing of an abuse of discretion. Gulf Wide Towing Inc. v. F.E. Wright (U.K.), Ltd., 554 So.2d 1347 (La.App. 1 Cir.1989); Gravolet v. Board of Com'rs for Grand Prairie Levee Dist., 95-2477 (La.App. 4 Cir. 6/12/96); 676 So.2d 199.
Nevertheless, the School Board alleges that this award was beyond the scope of the remand order. It noted that we remanded the case for a determination of only the following two issues: (1) the Defendant's exception of prescription as to the claims of two of the Plaintiffs, Stan Kasperski and Velton Vincent; and (2) the vacation time and penalty wages owed to the other nine Plaintiffs, i.e., Irma Ball, Louis Boudreaux, Thomas Harris, Mildred Haynes, Michelle Labit, Carlene O. Le-Maire, Johnny Picard, and also to Stan Kasperski and Velton Vincent, if their claims were found to be timely. See Picard v. Vermilion Parish School Bd., 98-1933 (La.App. 3 Cir. 6/23/99); 742 So.2d 589, writ denied, 99-2197 (La.11/19/99); 749 So.2d 675. The School Board claims that because we did not remand with an explicit order to award attorney fees, the trial court had no authority to raise the issue.
A trial court must not consider issues other than those for which the case was remanded. City of Shreveport v. Kansas City S. Ry. Co., 193 La. 277, 190 So. 404 (1939). However, in this case, while the appellate court did not specifically address the issue of attorney fees in its remand order, the employee is by law entitled to attorney fees. Louisiana Revised Statutes 23:632 contains the following provision:
Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee...
Because the award of attorney fees to a successful employee-litigant is a statutory right, an award on remand was assumed by this Court. Thus, even though this Court did not specifically direct the trial court to impose attorney fees, it was an implicit factor. The School Board's argument has no merit.
The School Board also alleges that the trial court awarded the Plaintiffs an excessive amount of attorney fees and that the award is unsupported by the record. In determining the amount of attorney fees to award a successful litigant, courts consider a number of factors, among them the following: (1) ultimate result obtained; (2) responsibility incurred; (3) importance of the litigation; (4) amount of money involved; (5) extent and character of the *597 work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. State through DOTD v. Jacob, 491 So.2d 138 (La.App. 3 Cir.1986), writ denied, 496 So.2d 331 (La.1986).
The School Board further posits that the Plaintiffs should only be awarded attorney fees for 56.75 hours of billable hours. This is the amount of time that was recorded in the initial affidavit filed at the trial by the Plaintiffs' attorney and thus represented the attorney's time invested in the case prior to trial. The School Board argues that the award of $12,000.00 plus the $6,500.00 awarded by the trial court at the initial trial equates to the sum of $326.00 per hour, or more than double the highest rate claimed by the Plaintiffs' attorney. However, this argument ignores the fact that the Plaintiffs' attorney spent a considerable amount of time during and subsequent to the trial of July 1, 1998, working on the case. The work subsequent to trial alone included, among other things: a post-trial memorandum, an appeal of the trial court's judgment, the defense of the School Board's appeal, opposition to the School Board's application for writs of certiorari to the Louisiana Supreme Court, a pre-trial conference with the trial judge and opposing counsel, and the filing of a pre-trial brief. The Plaintiffs's attorney attested that he had invested a total of 192 hours of billable time in this case. Thus, this means that the actual hourly rate falls within the low range of $125.00 to $150.00 per hour, rather than $326.00 per hour.
The award of attorney fees in the amount of $12,000.00 was well within the trial court's discretion. Therefore, the School Board's argument that this award was unsupported by the record and manifestly erroneous is without merit.

The Reduction of the Claims of Thomas Harris and Carlene O. LeMaire, and the Dismissal of Johnny Picard's Claim
Thomas Harris, Carlene O. LeMaire, and Johnny Picard all allege the trial court was manifestly erroneous in its finding regarding the number of days of unused annual leave they had remaining. The court found that Mr. Harris had thirty-eight (38) days of unused annual leave rather than forty-eight (48), that Ms. LeMaire had one (1) day rather than forty-three (43), and that Mr. Picard had no days remaining.
In the Baudoin trial, a trial which concerned the same defendant and different plaintiffs, the Plaintiffs and the School Board had jointly offered Exhibit D2/J2, an abstract of the employment and retirement records of the school system which covered the school years from the 1991-92 year through the 1995-96 year. See Baudoin, 692 So.2d 1316. The exhibit listed those people who had voluntarily retired with annual leave on the books for which they were not compensated. Compiled for trial purposes, in Baudoin the exhibit was admitted into evidence by stipulation between the parties. Conversely, when introduced in this case, it was understood by the parties and the trial court that the School Board disputed the number of days listed therein for Johnny Picard, Thomas Harris, Mildred Haynes, and Carlene LeMaire, as not being the correct number of days of accumulated annual leave. Thus, the School Board only stipulated to the exhibit's authenticity and not to its accuracy. The School Board had not contested this information in Baudoin because at that time there were no claims by these Plaintiffs. The Plaintiffs argue that because the School Board entered the exhibit into evidence in the Baudoin case as a *598 true reflection of the records of the School Board, the contents could not be repudiated or questioned in this case. They claim this stipulation amounts to a judicial confession which is binding on both parties and the court.
A stipulation in a legal proceeding acts as a judicial admission or confession which is binding on all parties and the court. R.J. D'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600 (La.1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984). Louisiana Civil Code article 1853 states:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
A party's explicit admission of an adverse factual element has the effect of waiving evidence as to the subject of the admission and thus of withdrawing the subject matter of the admission from dispute. Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979). The confession acts as the party's acknowledgment of the "correctness of the fact or act charged against him by his adversary." Davis v. Kreutzer, 93-1498 (La.App. 4 Cir. 2/25/94); 633 So.2d 796, writ denied, 94-733 (La.5/6/94); 637 So.2d 1050.
The judicial confession is binding on the court and must be applied as the law of the case in which it is made. 2304 Manhattan Blvd. Partnership v. Louisiana Power & Light Co., 94-192 (La. App. 5 Cir. 9/14/94); 643 So.2d 1282. However, agreements between parties do not effect the powers, duties and prerogatives of court in relation to other litigants. Graham v. Southern Pacific Transp. Co., 619 So.2d 894 (La.App. 3 Cir.), writ denied, 625 So.2d 1044 (La.1993). Thus, an earlier judicial admission does not bind a party in a subsequent proceeding unless the "other party claiming benefit of judicial estoppel resulting therefrom has been deceived by such judicial confession and has relied or acted thereon to his prejudice." Succession of Turner, 235 La. 206, 103 So.2d 91, 93 (1958). In order for the Plaintiffs to successfully claim that Exhibit D2/J2 was not at issue in this case, they must have detrimentally relied on the information stipulated to by the defendant in the Baudoin trial. This was not the case here. The Plaintiffs in this case did not use that information to their detriment. Instead, they merely used the information to pursue this cause of action.
Further, in order for the stipulation to constitute a judicial confession, the acknowledgment of the facts charged against the party who is confessing must be express. Broussard v. Leger, 624 So.2d 1304 (La.App. 3 Cir.1993), writ denied, 93-2762 (La.1/7/94); 631 So.2d 452. Here, there was no express acknowledgment of the exhibit information that specifically pertained to the Plaintiffs in this case. Their days of annual leave were not at issue in the Baudoin trial. Yet, even had there been an express acknowledgment of the facts contained in the exhibit, the trial court properly observed that a stipulation may be subsequently revoked on the basis of error of fact. La.Civ.Code art. 1853.
Here, there is evidence of error. Theresa Dubois, the payroll accountant for the School Board, testified on behalf of the School Board. She was responsible for recording the annual leave accumulated by employees as it was submitted to the School Board by the principals. Ms. Dubois testified that the number of leave days accumulated by an employee was automatically added by computer. This information *599 was submitted to Clifford Alleman, Jr., the assistant superintendent in charge of Administration and Personnel, in the course of preparation of Exhibit D2/J2. The number of days taken by the employee, however, was not automatically deducted and instead had to be entered in manually. Mr. Alleman had received the prededuction figures because the days of annual leave taken by the employees had not yet been deducted from the annual leave totals.
According to Ms. Dubois, based on her analysis of the records which included the deducted days, or days taken by the employees, the information on Exhibit D2/J2 was incorrect with regard to these three Plaintiffs. She testified that, according to the actual School Board records that she herself examined, Mr. Harris had thirty-eight (38) days, Ms. LeMaire had one (1) day, and Mr. Picard had none. None of these Plaintiffs was able to dispute Ms. Dubois' testimony. They were unable to offer any evidence to support their claim for the number of days that were listed on Exhibit D2/J2. Mr. Picard himself testified that the only basis for his claim that he was owed one hundred and eight (108) unused days was the exhibit itself. He stated that he had in fact taken annual leave days and had thought that they had all been used prior to his retirement. Like Mr. Picard, Ms. LeMaire admitted that prior to the Baudoin trial, she had thought she had used all of her vacation days prior to her official retirement date. Mr. Harris testified that he had regularly taken vacation days during his employment and had never been denied a request for leave. He was unable to recall how many days he normally took and thus did not know how many days to claim. His suit also was based entirely on the information submitted in Exhibit D2/J2.
Therefore, the School Board's stipulation as to the accuracy of the information in Exhibit D2/J2 in the Baudoin trial is not binding on the parties in this case. Its accuracy was not withdrawn from issue and the School Board had the right to repudiate it in this trial. Thus, we cannot find that the trial judge committed manifest error in finding that Mr. Picard had no unused annual leave, that Mr. Harris had thirty-eight (38) days rather than forty-eight (48), and that Ms. LeMaire had one (1) day rather than forty-three (43).

IV.

CONCLUSION
Accordingly, for the foregoing reasons, the trial court's judgment is affirmed. Two-thirds of the costs of this appeal are assessed against the Defendant/Appellant, the Vermilion Parish School Board, and one-third are assessed against Johnny Picard, Thomas Harris and Carlene O. LeMaire.
AFFIRMED.
NOTES
[1] Employee who quit her job was entitled to compensation for accrued vacation time, which constituted "wages" under company policy in spite of her employer's personnel policy that stated that if the employee quits without cause, she is considered to have forfeited any benefits that have accrued. Beard, 707 So.2d 1233. Thus, the employer may not require the employee to forfeit "wages" upon resignation. Id.
[2] Unused vacation pay is to be considered wages and therefore employers are required to pay accrued wages to terminated employees unless the employer has an "established policy" which does not allow such payments. Huddleston v. Dillard Dept. Stores, Inc., 94-53, p. 2 (La.App. 5 Cir. 5/31/94); 638 So.2d 383, 384. Unused vacation pay is equivalent to "amount then due under terms of employment." Barrilleaux v. Franklin Found. Hosp., 96-343, p. 5 (La.App. 1 Cir. 11/8/96); 683 So.2d 348, 353, writ denied, 96-2885 (La.1/24/97), 686 So.2d 864.